IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOSHUA DAVID LETT, § | |
| Plaintiff, § | |
| § | |
| v. § | No. 3:21-cv-02257-S (BT) |
| § | |
| LA SALLE SOUTHWEST § | |
| CORRECTIONS, ET AL. § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Joshua David Lett, a Texas inmate proceeding *pro se*, alleges that the conditions of his confinement while a pretrial detainee at the Johnson County Jail violated federal and state law. The Court granted Lett leave to proceed *in forma pauperis* but has not issued process pending judicial screening. ECF No. 6. As explained below, the Court should dismiss Lett's federal claims pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B). The Court should decline to exercise supplemental jurisdiction over Lett's state law claims, which should be dismissed without prejudice.

**Background**

In his complaint, amended complaint, and responses to a magistrate judge questionnaire (MJQ), Lett alleges as follows:

While Lett was a pretrial detainee at the Johnson County Jail,[1] his rights under the United States Constitution and Texas law were violated in "regards to food preparation, food handling, sanitation, and sufficiency of quantity with unreasonable variety, and unacceptable living conditions." ECF No. 3 at 4. These conditions, happened "daily and for years." ECF No. 3 at 7.

Specifically, showers and toilets were not cleaned. ECF No. 3 at 4. And while detainees were given three "chemical bottles" to clean general surfaces, this did not satisfy "the cleanliness required to prevent sickness and the spread of other illnesses . . . ." ECF No. 3 at 10.

Lett also attaches declarations from other inmates/detainees to his pleadings. Some complain that the living quarters were not cleaned. ECF No. 3 at 11, 16. Others complain: there was no bleach to sanitize the showers or commodes; there were no towels to dry and clean surfaces including sinks; detainees were only given 3 spray bottles per day to try to sanitize "facilities for 24 cells;" the chemical agent in the spray bottles was inadequate; and showers and toilets were not being cleaned. ECF No. 3 at 14, 15, 17. Lett does not allege that he or any other detainee ever became ill from the unsanitary conditions, however.

---

[1] After filing this action, Lett was convicted of continuous sexual abuse of a child under the age of 14 and sentenced to life imprisonment, so he is no longer a pretrial detainee; nor is he incarcerated in the Johnson County Jail. https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=12677770 (last visited September 7, 2023).

2

Regarding food adequacy, preparation, and sanitation, Lett claims that:

- Correctional officers opened and placed food trays on the dirty floor and then served the trays to the detainees from the floor. (ECF No. 3 at 7).

- Food was "always" cold. (ECF No. 3 at 10).

- Food trays did not seem to be cleaned or sanitized. (ECF No. 3 at 10).

- Old food was stuck to trays, and the food bus was covered with the remnants of old food, including splatter from careless transport. (ECF No. 3 at 10).

Other detainees/inmates echo those sentiments, adding that food at the Johnson County Jail was over or undercooked, generally inadequate to support nutrition needs, and not varied enough. ECF No. 3 at 12-17. One detainee states that there were "sometimes ants in the food box." ECF No. 3 at 11.

Finally, Lett complains that his grievances about his conditions of confinement were "intentionally ignored." ECF No. 3 at 9.

Based on these allegations, Lett sues Adam King, the Sheriff of Johnson County; Joe Sullivan, the Warden of the Johnson County Jail; Major Carroway, a correctional officer at the Johnson County Jail; and Deborah Martinez, the correctional officer in charge of "food service" at the Johnson County Jail. ECF No. 3 at 2-3; ECF No. 8 at 3. He also sues LaSalle Southwest Corrections, which is a

3

private entity that presumably oversees the administration of the Johnson County Jail. ECF No. 3 at 1, 7.[2]

He brings this action pursuant to 42 U.S.C. § 1983, claiming that the conditions of confinement violated the Eighth Amendment and various state laws. *See*, *e.g.*, ECF No. 3; ECF No. 8; ECF No. 10. For relief, he seeks monetary damages—including nominal and punitive damages—and an "injunction" from this Court ordering that the individual defendants be removed from their positions, disciplined, or suspended[3]. *See* ECF No. 10 at 1-5.

## **Legal Standards and Analysis**

As a prisoner proceeding *in forma pauperis*, Lett's complaint is subject to preliminary screening under 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2). Under those provisions, a district court may summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim upon which relief may be granted, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic*

---

[2] *See also Moore v. LaSalle Corr. Inc.*, 429 F.Supp.3d 285, 286 (W.D. La. 2019) (describing LaSalle as a private company that works under contract with local political subdivisions to provide correctional services).

[3] Even if Lett stated a claim, which, as explained, he does not, the Court could not award this kind of relief. *See*, *e.g.*, *Deberry v. Pennsylvania*, 2017 WL 3480982, at *1 (E.D. Pa. Aug. 11, 2017) (federal court cannot direct the firing of police officers).

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1. <u>Lett fails to state a conditions-of-confinement claim against Johnson County or LaSalle.</u>

Lett complains about his conditions of confinement as a pretrial detainee, claiming that they violated the Eighth Amendment. But, while "[t]he standard is the same as that for a prisoner under the Eighth Amendment," a pretrial detainee's § 1983 claims are analyzed under the Fourteenth Amendment. *Cadena v. El Paso Cty.*, 946 F.3d 717, 727 (5th Cir. 2020). "The Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment.'" *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). However, "[t]he Constitution is not concerned with a *de minimis* level of imposition on pretrial detainees," as this does not amount to punishment. *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (citing *Bell*, 441 U.S. at 535).

Lett sues the Johnson County Sheriff, the Warden of the Johnson County Jail, and two other correctional officers at the Johnson County Jail in their official capacities. ECF No. 10 at 6. A suit against a municipal officer in his or her official capacity is a suit against the entity of which the officer is an agent. *Will v. Michigan*

5

*Dep't of State Police,* 491 U.S. 58, 71 (1989). So, Lett's official-capacity claims are treated as claims against Johnson County.

Lett also sues LaSalle, presumably for administering the Johnson County Jail. Although LaSalle is a private corporation, it may be sued under § 1983 for alleged constitutional injury, "because the operation of a prison is a fundamental government function." *Kennemer v. Parker Cty., Tex.*, 2021 WL 1192249, at *7, n.3 (N.D. Tex. Mar. 30, 2021) (concluding that LaSalle could be sued under § 1983). And "[t]he standards applicable to determining liability under § 1983 against a municipal corporation are applicable to determining the liability of a private corporation performing a governmental function." *Id.* (citing *Monell v. Dep' of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)). Thus, the § 1983 claims against LaSalle are reviewed under the same standards as the § 1983 claims against Johnson County. *Id.*

A municipality like Johnson County or LaSalle may be liable under § 1983 for violating the Fourteenth Amendment rights of a pretrial detainee. "When attributing violations of pretrial detainees' rights to municipalities, the cause of those violations is characterized either as a condition of confinement or as an episodic act or omission." *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019 (citing *Hare v. City of Corinth*, 74 F.3d 633, 644-45 (5th Cir. 1996)). The conditions-of-confinement test applies where "the wrong of which the detainee complains is a general condition of confinement." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997). "Prior conditions cases have concerned durable restrains or

impositions on inmates' lives like overcrowding, deprivation of phone or mail privileges, the use of disciplinary segregation, or excessive heat." *Garza*, 922 F.3d at 633-34.

On the other hand, episodic-act-or-omission claims seek to redress harms from the "particular act or omission of one or more officials," rather than harms that result directly from an unconstitutional policy, practice, or rule of the institution. *Id.* at 632 (quoting *Scott*, 114 F.3d at 53). "Whereas conditions-of-confinement claims challenge the constitutionality of pervasive, systemic policies and customs themselves; episodic-acts-or-omissions claims challenge the constitutionality of the way in which a policy or custom was applied by a jail official in a particular instance." *Feliz v. El Paso Cty.*, 441 F.Supp.3d 488, 497 (W.D. Tex. 2020) (citing *Estate of Henson v. Wichita Cty.*, 795 F.3d 456, 466-67 (5th Cir. 2015)).

Because Lett alleges that the conditions of which he complains have existed for "years," they appear to be the kind of "durable restraint" or practice that the Court should analyze under the conditions-of-confinement rubric. "In a case challenging conditions of confinement, 'the proper inquiry is whether those conditions amount to punishment of the detainee.'" *Garza*, 922 F.3d at 632 (citing *Bell*, 441 U.S. at 535).

To show that conditions of confinement amount to punishment, a pretrial detainee must "provide (1) a rule or restriction or . . . the existence of an identifiable intended condition or practice . . . [or] that the jail official's acts or omissions were

7

sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [the detainee's] constitutional rights." *Duvall v. Dallas Cty. Texas*, 631 F.3d 203, 207 (5th Cir. 2011) (first alteration in original) (internal quotations and citations omitted).

### i. *Food Adequacy, Preparation, and Sanitation*

Lett claims that pretrial detainees are not given enough food, that the food is not varied or nutritional enough, and that the food is often improperly cooked or served cold. ECF No. 3 at 4, 9, 11-17. He provides no specific details about how much food pretrial detainees are given. As for what food is given, one detainee complains that beans and rice are given as a main course three times a week for lunch and supper, and another complains that there is no fresh fruit or ice water. ECF No. 3 at 11, 17.

Constitutional standards only require that the prison authorities provide inmates or detainees with "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (quoting *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)). "The Constitution does not require that [pretrial detainees] be provided with particular foods or food at a certain temperature or every culinary amenity which one may find desirable." *Whelen v. Penouilh*, 2009 WL 86667, at *12 (E.D. La. Jan. 13, 2009) (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983); *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978)), *rev'd on other grounds sub nom. Bell*, 441 U.S.

8

520 (citing *Newman v. Alabama,* 559 F.2d 283, 291 (5th Cir. 1977)). "The Constitution also does not require that plaintiff receive certain types of food." *Id.* at *12 (citing *Green,* 801 F.2d at 770). "Even on a regular, permanent basis, two meals a day may be adequate." *Berry,* 192 F.3d at 507 (quoting *Green,* 801 F.2d at 770-71).

Lett has not plausibly alleged that the food at the Johnson County Jail has been so sparse or nutritionally inadequate as to cause injury or illness. He therefore fails to plausibly allege that the nutritional value or quantity of food is constitutionally deficient. *See Smith v. Sullivan,* 553 F.2d 373, 380 (5th Cir. 1977) ("A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required."). "Moreover, the fact that food was served cold or at improper temperatures does not rise to a constitutional deprivation." *McGarrah v. Kimbrow,* 2015 WL 105228, at *5 (N.D. Tex. Jan. 6, 2015).

Lett also complains that food is prepared, handled, and presented in an unsanitary fashion. ECF No. 3 at 4, 7, 10-17. But he does not allege that he has suffered harm or illness because of these conditions, therefore he fails to allege a constitutional violation. *See, e.g., Flowers v. Dent,* 21 F.3d 1109, 1994 WL 171707 (5th Cir. Apr. 29, 1994) (affirming dismissal of complaint asserting that inmate did not receive adequate food and the kitchen supplies were unsanitary, where no harm was shown); *Northrup v. Bell,* 2012 WL 2814307, at *5 (E.D. Tex. June 12, 2012), *rec. accepted* 2012 WL 2813973 (E.D. Tex. July 9, 2012) (dismissing food sanitation and preparation claims where the inmate did not allege that he suffered

harm or illness from allegedly unsanitary conditions); *Brown v. Gusman*, 2015 WL 9312553, at *8 (E.D. La. Oct. 29, 2015), *rec. accepted* 2015 WL 9268540 (E.D. La. Dec. 21, 2015) (same); *see also Gabriel v. Gusman*, 2010 WL 3169840, at *6 (E.D. La. July 16, 2010), *rec. accepted* 2010 WL 3175045 (E.D. La. Aug. 10, 2010) ("[W]ithout an allegation of resulting harm, complaints regarding food service practices simply are not of constitutional dimension.") (collecting cases).

Lett also complains that the prison's "food preparation, food handling, sanitation, and sufficiency" violate Tex. Gov. Code § 501.003, which generally requires that prisons in Texas provide food that is nutritionally balanced, healthy, wholesome, prepared under sanitary conditions, and provided in sufficient quantity and reasonable variety. But without deciding whether the prison's food practices conform with that state law, state laws and regulations do not establish the standard for Eighth or Fourteenth Amendment violations. *See*, *e.g.*, *Walton v. Brookhart*, 2023 WL 4591793, at *3 (S.D. Ill. July 18, 2023) ("Likewise, violations of state laws or prison policies do not amount to a violation of the Constitution under § 1983.") (citing *Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020); *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006)).

In sum, Lett has failed to allege anything other than a *de minimis* imposition in relation to the food adequacy, preparation, and sanitation at the Johnson County Jail.

### ii.     Other Unsanitary Conditions

Lett complains that other conditions in the jail are not sanitary. He claims that showers, toilets, and the living area are not cleaned. ECF No. 3 at 4. He admits that detainees are provided with three chemical bottles to clean general surfaces but claims that this is not sufficient to prevent sickness and the spread of illness. ECF No. 3 at 10. Lett does not allege how long he was exposed to the allegedly unsanitary conditions.

Lett's allegations are not severe enough to find anything other than a *de minimis* level of imposition. Only in extreme circumstances do unsanitary conditions rise to the level of a constitutional deprivation. *See Garrett v. Smith,* 2021 WL 1215871, at *9 (E.D. La. Jan. 14, 2021), *rec. accepted* 2021 WL 1212535 (E.D. La. Mar. 31, 2021). The Fifth Circuit, for example, found that unsanitary living conditions violated the Constitution where "a wall was almost completely covered in black mold," and urine and feces. *See Hope v. Harris,* 861 F. App'x 571, 584 (5th Cir. 2021) (per curiam). In *McCord v. Maggio,* 927 F.2d 844, 848 (5th Cir. 1991), the Fifth Circuit found a violation where a prisoner was forced, for a ten-month period, to sleep on a wet mattress "in filthy water contaminated with human waste." *See also Gates v. Cook,* 376 F.3d 323, 333 (5th Cir. 2004) (finding unconstitutional conditions of confinement where prisoners lived in cells covered with crusted fecal matter, food on the walls, peeling and chipping paint, and water from flooded toilets and rain leaks).

Lett alleges nothing like that here. He admits that detainees have access to cleaning products, which militates against a constitutional violation. *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998). And while he alleges that the shower, toilet, and living area are not clean and that the cleaning products are not enough to prevent the spread of disease, these allegations are conclusory and do not establish that he was subjected to conditions severe enough to amount to punishment. *See*, *e.g.*, *Hernandez v. Delaware Cty. of Pennsylvania*, 2023 WL 349254, at *4 (E.D. Pa. Jan. 20, 2023) (finding that the detainee's conditions of confinement allegations failed "because they are vague and factually underdeveloped. Hernandez alleges that he was placed in an 'overcrowded, unsanitary and unsafe intake cell for about a week' where he was subjected to 'extreme cold temperatures' and denied 'a mattress, cleaning products, showers, and a clean toilet.' Hernandez has not alleged any facts about what it was that made the intake cell unsanitary, unsafe, or overcrowded. These conclusory allegations, without more, fail to raise an inference that the conditions were intended as punishment"); *Watts v. Davis*, 2019 WL 7568192, at *4 (D.S.C. Oct. 31, 2019), *rec. accepted* 2020 WL 136836 (D.S.C. Jan. 13, 2020) (finding allegations that the plaintiff was "living in VERY unclean conditions such as mold in room and air vents, ants, roach[es], rats living in living area and not getting proper[] hygiene" were too conclusory to state a claim under the Eighth Amendment). Therefore, Lett fails to state a claim.

### *iii.   Ignoring Grievance*

Lett claims that his grievances regarding the conditions of his confinement were intentionally ignored. ECF No. 3 at 9. But a prisoner does not have a constitutional right to a grievance procedure at all. *Staples v. Keffer*, 419 F. App'x 461, 463 (5th Cir. 2011) (per curiam) (citing *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005)). And a prisoner does not have a federally protected liberty interest in having grievances resolved to his satisfaction. *Geiger*, 404 F.3d at 374. Therefore, Lett's claims that his grievances have been ignored or mishandled do not establish a viable claim under § 1983. *See Adams v. Layton*, 2023 WL 2058698, at *3 (E.D. Tex. Jan. 16, 2023), *rec. accepted* 2023 WL 2054282 (E.D. Tex. Feb. 16, 2023)).

2. <u>Lett fails to state a claim against any defendant in their individual capacities</u>.

Lett also sues the Sheriff, Warden, and other correctional officers in their individual capacities. ECF No. 10 at 6. Initially, he claims in a conclusory fashion that these defendants were "direct participants" (ECF No. 3 at 8) in relation to the conditions that he complains about, but he does not explain how they were personally involved. Upon closer inspection, his claims are best conceptualized as claims that the individual defendants failed to supervise or train their subordinates, which led to the complained-of conditions of confinement. *See* ECF No. 10 at 2-5 (alleging, for example, that the Warden failed to "enforce employees [sic] sanitation and proper food preparation and that Martinez had duty to "apply

[the] training" provided to her to ensure the sanitation and proper food preparation").

So understood, the individual-capacity claims fail for two reasons. First, as discussed above, Lett fails to plausibly allege an independent constitutional violation, which is a prerequisite to supervisor liability. *See Jordan v. Gautreaux*, 593 F.Supp.3d 330, 366 (M.D. La. 2022) (collecting cases). And second, Lett fails to plausibly allege deliberate indifference, another prerequisite to supervisor liability. *See Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1988). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 912. In the failure-to-train/failure-to-supervise context, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training [or supervision] is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003).

Lett does not allege any prior specific instances of constitutional violations like what he complains about here. He only alleges in vague and conclusory fashion that the complained-of condition(s) "happens daily and for years." ECF No. 3 at 7. Given the absence of an underlying constitutional violation, and given the absence of plausible allegations of deliberate indifference, Lett fails to state a claim against any defendant in his or her individual capacity.

3. <u>The Court should decline to exercise supplemental jurisdiction over Lett's state law claims.</u>

Lett claims that the conditions of confinement at the Johnson County Jail violated the Texas Code of Criminal Procedure, the Texas Government Code, the Texas Constitution, the Texas Commission of Jail Standards, and amounted to intentional infliction of emotional distress under Texas tort law. ECF No. 3 at 2, 4, 7, 9; ECF No. 10 at 2. There is no independent jurisdictional basis for these claims, though, so the Court can only exercise supplemental jurisdiction over them under 28 U.S.C. § 1367.

Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over a claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it had original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." "In making its determination as to whether to exercise supplemental jurisdiction, 'the court is guided by the . . . statutory factors as well as the common law factors of judicial economy, convenience, fairness, and comity.'" *Robinson v. Webster Cty., Miss.*, 2020 WL 1180422, at *11 (N.D. Miss. Mar. 11, 2020), *aff'd* 825 F. App'x 192 (5th Cir. 2020) (per curiam) (citation omitted).

"As a general rule, a federal court should decline to exercise jurisdiction over pendant state claims when all federal claims are disposed of prior to trial." *Brim v.*

*ExxonMobil Pipeline Co.*, 213 F. App'x 303, 305 (5th Cir. 2007) (per curiam) (citations omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Parker & Parsley Petroleum Co. v. Dresser Ind.*, 972 F.2d 580, 586 (5th Cir. 1992) (citation omitted).

Here, the Court should decline to exercise supplemental jurisdiction over any state law claims. Lett's claims do not present complex issues of state law. And the Court has recommended dismissal of all of Lett's federal claims, which weighs against retaining the state claims. Relatedly, given the dismissal of the federal claims, the state claims predominate. Finally, judicial economy, convenience, fairness, and comity also support declining jurisdiction because this case is still at the screening stage, no trial date has been set, and there is no scheduling order in place. *See Brim*, 213 F. App'x at 306.

In sum, after considering all applicable factors, the Court should decline to exercise supplemental jurisdiction over Lett's state law claims.

## **Leave to Amend**

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes*, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an

16

opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. But "granting leave to amend is not required if the plaintiff has already pleaded his 'best case.'" *Bryant v. Wells Fargo Bank*, 2018 WL 4290791, at *4 (N.D. Tex. Aug. 23, 2018), *rec. accepted* 2018 WL 4283556 (N.D. Tex. Sept. 7, 2018) (citing *Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam).

Here, Lett has already filed an amended complaint and responded to a detailed MJQ designed to allow him to plead his best case. He has therefore had ample opportunity to plead his best case. Further leave to amend is neither necessary nor warranted.

## **Recommendation**

The Court should dismiss with prejudice Lett's federal claims pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim. It should decline to exercise supplemental jurisdiction over his state law claims and dismiss those claims without prejudice.

**SO RECOMMENDED. September 7, 2023.**

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

      A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996)